**Philip J. HIRSCHKOP, and Richard Shadyac, Appellants,**

v.

**The VIRGINIA STATE BAR, Phillip M. Sadler, Harvey Chappell and Virginia State Bar Ethics Committee, Appellees.**

No. 78–1176.

United States Court of Appeals, Fourth Circuit.

Argued March 7, 1979.

Decided Aug. 15, 1979.

Philip J. Hirschkop, Alexandria, Va. (John D. Grad, Victor M. Glasberg, Hirschkop & Grad, P. C., Alexandria, Va., Richard Shadyac, Annandale, Va., Jeremiah S. Gutman, New York City, on brief), for appellants.

Walter H. Ryland, Asst. Atty. Gen., Richmond, Va. (Marshall Coleman, Atty. Gen. of Va., Stuart H. Dunn, Chief Deputy Atty. Gen., Richmond, Va., on brief), for appellees.

Before RUSSELL and PHILLIPS, Circuit Judges, and EDWARD DUMBAULD, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

DONALD RUSSELL, Circuit Judge:

This suit presents a constitutional attack upon the advertising provisions of the Code of Professional Responsibility promulgated by the American Bar Association and adopted by the Virginia Supreme Court for members of the State Bar of Virginia.[1] The challenged provisions are:

"DR 2–101 Publicity in General.

(A) A lawyer shall not prepare, cause to be prepared, use, or participate in the use, of any form of public communication that contains professionally self-laudatory statements calculated to attract lay clients; as used herein, 'public communication' includes, but is not limited to, communication by means of television, radio, motion picture, newspaper, magazine, or book.

(B) A lawyer shall not publicize himself, his partner, or associate as a lawyer through newspaper or magazine advertisements, radio or television announcements, display, advertisements in city or telephone directories, or other means of commercial publicity, nor shall he authorize or permit others to do so in his behalf except as permitted under DR 2–103."

Rules for the Integration of the Virginia State Bar, Part Six, Rules of the Supreme Court of Virginia.

The plaintiffs/appellants are members of the Virginia State Bar and they sue both individually and as representatives of the whole class of members of such Bar. The defendants/appellees are the Virginia State Bar, its president, in his official capacity and in an individual capacity and the Virginia State Bar Ethics Committee and its chairman in his official capacity and as representative of the individual members of the Ethics Committee.[2] Initially the plaintiffs raised claims that the assailed rules were violative of the anti-trust laws but such claims were dismissed. The plaintiffs do not question such dismissal on this appeal. The cause went to trial on the claim of the plaintiffs that the rules represented primarily violations of free speech. The

---

1. The authority of the Supreme Court of Virginia to prescribe "a code of ethics governing the professional conduct of attorneys-at-law" practicing in that State is clearly stated in § 54–48, Code of Virginia (1950). The creation of the Virginia State Bar and its function under the rules adopted by the Supreme Court of that State are well settled. *See Goldfarb v. Virginia State Bar* (1975) 421 U.S. 773, 789, n. 19, 95 S.Ct. 2004, 44 L.Ed.2d 572.

2. Jurisdiction is asserted under §§ 1331, 1337 and 1343, 28 U.S.C. and §§ 1983, 1985, 42 U.S.C., and the First, Fifth, Sixth and Fourteenth Amendments to the Constitution.

evidence in support of this constitutional claim was largely directed at the self-laudatory proscription imposed by the rules.[3]

After trial but before the parties had filed their briefs, the plaintiffs, representing to the district court that the issues in this case were the "identical issues" involved in *Bates v. State Bar of Arizona,* then before the Supreme Court on grant of certiorari, moved that briefing be "suspended until such time' as the United States Supreme Court takes final action in the *Bates* case." The motion was granted without objection by the defendants. When *Bates* was decided,[4] the district court, over objections of the plaintiffs, dismissed the action as moot, stating:

> "Defendants having made it clear they intend to abide by the decision in *Bates* and that a study is now being made of the language of the regulations under consideration to comport with *Bates,* and to eliminate any unconstitutional provisions of the rules, the issue before the court in this case is now moot."

It, also, denied the plaintiffs' attorneys' fees.

The plaintiffs have appealed both the dismissal of the action as moot and the disallowance of attorneys' fees. We are of the opinion that the dismissal was improper and that it is premature to consider the allowance of attorneys' fees before the resolution of the validity of the self-laudatory provision of the rules.

As we have indicated, the main thrust of plaintiffs' complaint was directed at, and most of the testimony taken in the proceedings revolved about, this issue of whether self-laudatory advertising by lawyers is to be classified as "commercial speech" and as such entitled to First Amendment protection. It may be conceded that such form of advertising, even though engaged in for pecuniary benefit rather than to advance "beliefs and ideas,"[5] does qualify as "commercial speech." This, however, does not answer the more fundamental question of how extensive and broad are the constitutional protections to which such speech is entitled under the First Amendment.[5a] While some commentators would suggest rather broad constitutional protections for this form of advertising designed as it is to secure "remunerative employment,"[6] the Supreme Court, in several recent cases since *Bates,* has said that "[a] lawyer's procurement of remunerative employment is a subject only marginally affected with First Amendment concerns" and "falls within the State's proper sphere of economic and professional regulation," subject as such to "prophylactic regulation in furtherance of the State's interest in protecting the lay public."[7] It has further declared that such "commercial speech," engaged in for pecuniary profit, calls for different standards of scrutiny in which claims of overbreadth have little or no relevancy,[8] and allows for

---

3. Self-laudatory advertising was described by the Supreme Court in *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), as "advertising claims relating to *quality* of legal services." At p. 366, 97 S.Ct. at p. 2700 (emphasis in text).

4. 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977).

5. For the distinction between the two types of speech in this connection, compare *In Re Primus* (1978) 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417 and *Ohralik v. Ohio State Bar Assn.* (1978) 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444.

5a. For a trenchant criticism of the idea that "commercial speech" may qualify for First Amendment protection, *see* Jackson and Jefferies, *Commercial Speech: Economic Due Proc-*

*ess and the First Amendment,* 65 *Va.L.Rev.* 1 (1979).

6. *See,* Huber, *Competition at the Bar and the Proposed Code of Professional Standards,* 57 *N.C.L.Rev.* 559 at 574–75 and 582–84 (1979); Hellman, *The Oklahoma Supreme Court's New Rules on Lawyer Advertising: Some Practical, Legal, and Policy Questions,* 31 *Okla.L.Rev.* 509 (1978); Note, *The Legal Profession Goes Public: Lawyers' Constitutional Right to Advertise,* 46 *UMKC L.Rev.* 317 (1977); Note, *Attorney Advertising and Solicitation–In the Wake of Bates,* 10 *Tex.Tech.L.Rev.* 166 (1978).

7. *Ohralik,* 436 U.S. at 459, 468, 98 S.Ct. at 1920–1925.

8. *See Ohralik,* 436 U.S. at 462, n. 20, 98 S.Ct. at 1922 n. 20.

"modes of regulation that might be impermissible in the realm of non-commercial expression." [9]

It is true that in *Bates* the Court sustained the right under the First Amendment for lawyers to engage in "the truthful advertising of" prices at which " 'routine' legal services" will be performed.[10] The truthfulness of such advertising is generally susceptible to "precise measurement or verification." Self-laudatory statements, however, are not so easily verifiable, particularly by lay persons. In *Friedman v. Rogers*,[11] decided at the current term, the Supreme Court denied optometrists the right under First Amendment entitlement to use a trade-name in their advertisements, finding that such advertising carries such indicia of quality as to be misleading to the lay public and consequently subject to restraint. It can well be argued that self-laudatory advertising by lawyers would fall under the same ban. But however persuasive we may find this view, it presents a point, which was not addressed by the district court but which has been posed by the plaintiffs. So long as this point has not been resolved, it cannot fairly be said that this action has become moot as a result of the decision in *Bates,* which very plainly declared it was not addressing "the peculiar problems associated with advertising claims relating to the *quality* of legal services," claims which the Court declared "probably are not susceptible of precise measurement or verification and, under some circumstances, might well be deceptive or misleading to the public, or even false." [12]

It is, however, the position of the defendants that the plaintiffs, by representing to the district court that the issues were "identical" with those in *Bates,* are no longer in a position to urge that there are issues remaining in this case outside the decision in *Bates.* Even if the declaration by the plaintiffs on their motion for delayed briefing that the issues in this case were "identical" with those in *Bates* should be considered in the nature of a representation, it would be a representation contrary to fact, since a primary issue as raised by the plaintiffs both in their pleadings and in their proof was not, even though it may have been raised below in the Arizona court, addressed by the Supreme Court in *Bates.* Whether this was because the plaintiffs were mistaken in their understanding of the issues which the Supreme Court undertook to resolve on its grant of certiorari in *Bates* or not, it would be unfair to dismiss one of their primary claims because of a misapprehension on the plaintiffs' part as to the narrow scope of the Supreme Court's grant of its writ or because, for some reason, the Supreme Court may not have chosen to decide the self-laudatory claim. Nor would it be in the interest of judicial economy to use the plaintiffs' possible mistake about the issues in *Bates* as a basis for a dismissal of this action as moot when the only result of such a ruling would be the filing of another action, raising the issue and requiring the re-tracing of the record already made in this case.

The dismissal of this action as moot is accordingly reversed and the cause is remanded to the district court for the disposition of the issues raised by the parties but not settled by *Bates.* It may be that, on remand, the district court would wish to abstain for a reasonable time in order to allow the Virginia Supreme Court to formulate its revision of the challenged rules, a process which the defendants suggest is now under active consideration by the Virginia Supreme Court.[13] In any event, until

"Nor could appellant make a successful overbreadth argument in view of the Court's observation in *Bates* that 'the justification for the application of overbreadth analysis applies weakly, if at all, in the ordinary commercial context.' "

9. *Ohralik,* 436 U.S. at 456, 98 S.Ct. at 1918.

10. *Ohralik,* 436 U.S. at 448, 98 S.Ct. 1912.

11. 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100.

12. 433 U.S. at 366, 97 S.Ct. at 2700 (emphasis in text).

13. *See,* Field, *Abstention in Constitutional Cases: The Scope of the Pullman Abstension Doctrine,* 122 *U.Pa.L.Rev.* 1071 at 1118, *et seq.*

the issues in the case not resolved by *Bates* are resolved, any application for the allowance of attorneys' fees in favor of the plaintiffs' counsel for their services in prosecuting this action would, be premature. It is accordingly unnecessary for us to consider now whether in any event the officers and members of the State Bar, charged by statute with the obligation to enforce the challenged rules and regulations as the administrative arm of the Supreme Court, may be rendered personally liable for attorneys' fees in simply enforcing administratively those rules and regulations.[14] We accordingly express no opinion on the claim of error by the plaintiffs on the denial of attorneys' fees.

*REVERSED AND REMANDED.*

**14.** Though the parties have not at this stage in the proceeding raised the point, the district court may wish to consider in connection with the allowance of attorneys' fees whether attorneys, appearing of counsel for themselves, may claim attorneys' fees under § 1988, 42 U.S.C.